**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| MICHELLE FREENOR, STEVEN FREENOR, DAN LEGER, JEAN SODERLIND, and GHOST TALK, GHOST WALK LLC, | |
| *Plaintiffs*, | Civil Action No. _____ |
| v. | |
| MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, | |
| *Defendant.* | |

---

**COMPLAINT**

---

**INTRODUCTION**

1.     This civil-rights lawsuit seeks to vindicate the right of tour guides in Savannah, Georgia, to earn a living by speaking on topics of their choice without first obtaining a special license from the government. Under Savannah's regulations, Plaintiffs are subject to fines and even time in jail if they talk to their customers without the City's permission. To obtain that permission, Plaintiffs must surmount a series of unnecessary bureaucratic hurdles—including a multiple-choice test and examination by a doctor. Plaintiffs are committed to leading high-quality, accurate, and entertaining tours. However, under the First Amendment, Plaintiffs are entitled to speak freely, without being subject to a program under which the government determines who may speak and who may not.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.      Plaintiff Michelle Freenor earns her living as a licensed tour guide. Operating under the business name "Savannah Belle Walking Tours," Michelle regularly gives tours of the Savannah historic district. Michelle is a United States citizen and a resident of Georgia.

5.      Plaintiff Steven Freenor, Michelle's husband, works as a professor at Columbia College in Hinesville, Georgia, and as a teacher at Jenkins High School in Savannah, Georgia. Steven is not licensed as a tour guide, and cannot legally conduct tours in the City of Savannah. Were it not for Savannah's licensing requirement, Steven would conduct tours of the City. Steven is a United States citizen and a resident of Georgia.

6.      Plaintiff Dan Leger earns his living as a licensed tour guide. Operating under the business name "Savannah Dan," Dan regularly gives tours of the Savannah historic district. Were it not for Savannah's licensing requirement, Dan would hire unlicensed tour guides to conduct tours of the City. Dan is a United States citizen and a resident of Georgia.

7.      Plaintiff Jean Soderlind manages a tour guide company, "Ghost Talk, Ghost Walk LLC." Jean is not licensed as a tour guide, and accordingly cannot give tours in the City of Savannah. Instead, Jean's company pays licensed tour guides. Were it not for Savannah's licensing requirement, Jean would conduct tours of the City. Jean is a United States citizen and a resident of Georgia.

8.      Plaintiff Ghost Talk, Ghost Walk LLC is a limited liability corporation formed under the laws of the State of Georgia. Ghost Talk, Ghost Walk LLC hires guides who give tours of the Savannah historic district. Were it not for Savannah's licensing requirement, Ghost Talk, Ghost Walk LLC would hire unlicensed tour guides to conduct tours of the City.

9.      Defendant Mayor and Aldermen of the City of Savannah is a municipal entity organized under the Constitution and laws of the State of Georgia. In common parlance— including on Defendant's own website, flag, and official seal—Defendant is known simply as "the City of Savannah." However, through what this Court has described as a "paper-churning, taxpayer-dollar-wasting defense," the City has insisted that all legal pleadings use its "cumbersome, archaic name." *Willis v. Mayor & Aldermen of the City of Savannah*, 770 F. Supp. 2d 1349, 1351 (S.D. Ga. 2011).

## SAVANNAH'S TOUR GUIDE LICENSING SCHEME

10.      Savannah Code of Ordinances § 6-1508 makes it unlawful to "act or offer to act as a tour guide within the city" or to "play a role during a tour" without first obtaining a "tour guide permit" from the City.

11.      Savannah's regulations define a "[w]alking tour" as a "guided narrated tour conducted on foot by a licensed tour guide on sidewalks in squares." Savannah Code § 6-1502(q). A "[w]alking tour guide" must have "passed the tour examination and received a tour guide permit." *Id.* § 6-1502(r). In addition, "[w]alking tour guides and actors performing during a tour will display their tour guide card visibly on their person at all times." *Id.* § 6-1512.

12.      The City's regulations separately define a "[w]alking tour escort" as a "person who accompanies a group under the supervision of a licensed walking tour guide without giving

3

a narrated tour." Savannah Code § 6-1502(s). A person who does not give a narrated tour, and thus falls within the definition of a walking tour escort, is not required to be licensed as a guide.

13.    In order to obtain a tour guide permit, an individual must first submit an application to the City's Tourism Management and Ambassadorship Department. The application requires the prospective guide to disclose—among other things—their social security number, age, race, and weight. *See* Savannah Tour Guide Permit Application, www.savannahga. gov/DocumentCenter/View/4372.

14.    Along with the application, a prospective tour guide also is required to submit "a certificate from a reputable physician certifying that, in his opinion, the applicant is not afflicted with any disease or infirmity which might make him or her an unsafe or unsatisfactory tour guide." Savannah Code § 6-1510. This certificate must be updated every two years. *Id.*

15.    In completing the certificate, the physician must find that the individual is "[q]ualified" to perform the "suggested job duties" of a tour guide, which include "[v]erbal communication," "[a]ssisting passengers getting in & out of [a] vehicle or carriage," "[d]riving in all weather conditions," and "[d]riving a minimum of 40 hours per week, day or night." Fitness for Duty Physician's Statement, www.savannahga.gov/DocumentCenter/View/4399. The form does not distinguish between the "job duties" of a tour guide who will operate a bus or other vehicle, and one who will lead groups on walking tours.

16.    A prospective tour guide also is required to pass an examination "designed to test the applicant's knowledge of history and architecture of the city." Savannah Code § 6-1514(a).

17.    The examination consists of 100 questions. Questions are primarily multiple-choice format, but may also include "true/false" or "fill in the blank" type questions. Sample examination questions posted on the City's website include the location of the "[g]raves of the

Yellow Fever victims of 1820," the identity of "Savannah's greatest commercial disaster in the second decade of the 20th Century," and the ethnic and national origins of "[t]he Telfair family." *See* Sample Test Questions, www.savannahga.gov/DocumentCenter/View/4363. A passing grade on the examination is 80 percent. Savannah Code § 6-1514(b).

18.     On its website, the City of Savannah publishes a "Manual for the Instruction and Licensing of Tour Guides in the City of Savannah," which is "designed to provide a history for tour guides to study." Tour Guide Manual, www.savannahga.gov/DocumentCenter/View/4346. This study guide is over 100 pages long. *Id.*

19.     The study guide and the City's exam have no relevance to the types of stories told on many tours. For instance, many tours offered in Savannah consist of ghost stories, folk knowledge, restaurant or retail recommendations, or information concerning the filming of Hollywood movies such as *Midnight in the Garden of Good and Evil* or *Forrest Gump*. The City's exam does not test prospective tour guides on these subject areas.

20.     The City charges a $100 fee to administer the examination. *See* Tour Guide Study Manual & Permitting Process, www.savannahga.gov/index.aspx?NID=1493. This fee allows prospective tour guides two opportunities to take the test; beyond that, individuals who have not passed the test must pay another $100 fee if they wish to take the test again.

21.     Three years after first obtaining a permit, tour guides are required to once again pass a history exam. *See* Savannah Code § 6-1514(a). The City charges a $25 fee to administer this renewal examination. *See* Tour Guide Study Manual & Permitting Process, www.savannah-ga.gov/index.aspx?NID=1493.

22.     Tour guides also are required to pay for and submit to a criminal background check every year when they renew their permits. *See* Tour Guide Study Manual & Permitting

5

Process, www.savannahga.gov/index.aspx?NID=1493. The police department charges a $20 fee to conduct a background check. Individuals are required to go in person to the police station to request a background check.

23.     Finally, tour guides must pay a $10 annual fee to maintain their license as a tour guide. *See* Tour Guide Study Manual & Permitting Process, www.savannahga.gov/index.aspx?NID=1493. This $10 fee must be paid along with the initial application, and must be paid every year thereafter as long as the guide wishes to maintain a license. *Id.*

24.     Under the City's current interpretation of its ordinances, guides who work for multiple tour companies are required to obtain a separate license for each company.

25.     Violations of the City's tour guide licensing scheme are punishable by fines up to $1,000 or by up to 30 days' imprisonment in a "work gang[ ] or other means of confinement." *See* Savannah Code §§ 1-1013, 6-1550(a); Ga. Code Ann. § 36-30-8.

## SAVANNAH'S SPECIAL TAX ON TOURS

26.     Savannah charges a speech tax of $1 per adult audience member on any "[s]ightseeing tours conducted within the Historic District of Savannah." City of Savannah 2014 Revenue Ordinance Article T, § 3(A)-(B). For children twelve and under, the amount of this speech tax is 50 cents. *Id.* No speech tax is charged for children age three or under, "provided that no tour fee is charged" by the guide. *Id.*

27.     Savannah's speech tax applies to "local motor vehicle tours, horse drawn carriage tours, walking tours, boat tours, and any other commercial tours." *Id.* § 3(B). The speech tax does not, however, apply to "persons boarding a tour boat for dining and on-board entertainment purposes where a sightseeing tour is not the focus or emphasis of the event and where no tour

narration is provided." *Id.* Whether Savannah's speech tax applies thus depends on the presence of a "tour narration."

28.    The City's Revenue Ordinance provides that payment of the speech tax is a "condition for doing business within the City as a sightseeing tour business" and that sanctions for failure to pay the fee may include revocation of the business's tax certificate. *Id.* § 3(G).

29.    Savannah's speech tax applies regardless of whether the tour guide is paid for giving a tour. Many tour guides in Savannah work for voluntary payment at the end of their tours; if a tourist is unhappy with a tour, or mistakenly believes that the price of the tour has already been paid by their hotel, the guide will not be paid. The City expects tour guides to pay the speech tax regardless of whether they receive any money for giving their tour.

30.    The 50-cent speech tax for children four to twelve years old also applies even if the tour guide does not charge for children to attend the tour. For instance, some guides do not charge for children twelve and under. Those tour guides must pay the city a speech tax for the privilege of speaking to children between the ages of four and twelve on their tours, even though the children are able to attend for free.

31.    The City does not charge any analogous tax on other economic activity within the historic district. For example, some companies in Savannah sell scavenger hunts, during which tourists move through the City's public spaces in order to satisfy various challenges set forth by the scavenger hunt operator. No analogous tax is charged to operators of these scavenger hunts.

32.    If the City needs to fund preservation of its public spaces, the City easily could do so through a nondiscriminatory tax on all economic activity within the historic district.

**SAVANNAH'S REGULATIONS BURDEN PLAINTIFFS' SPEECH**

**Michelle Freenor**

33.     Plaintiff Michelle Freenor, operating under the business name "Savannah Belle Walking Tours," has worked for approximately five years giving tours of Savannah's historic district.

34.     Michelle's tours focus primarily on the history of Savannah, but also touch on numerous other subject areas. For instance, Michelle talks about locations where movie scenes were filmed; provides recommendations for dining or retail experiences; tells ghost stories; and quizzes tourists on trivia about the City of Savannah. When Michelle tells stories about the City's history, it is her goal to make the stories lively and entertaining for her customers.

35.     Before Michelle began working as a tour guide, she obtained a tour guide license. Michelle was required to submit an application for the license, take a 100-question multiple choice test, pay a $10 fee charged by the City of Savannah, submit to and pay for a background check, and undergo examination by a doctor to determine whether she is "qualified" to speak.

36.     After working as a tour guide for a period of three years, Michelle was required to once again pass a tour guide licensing exam.

37.     For each of the approximately five years that she has been in business, Michelle has been required to pay the $10 fee charged by the City of Savannah to renew her tour guide license. When Michelle renews her license, she will be required to once again pay the fee.

38.     In order to renew her license, Michelle is required to undergo examination by a doctor once every two years in order to determine whether she remains "qualified" to speak.

39.     Michelle suffers from lupus and from mixed connective tissue disease, as well as cardiomyopathy. As a result, Michelle has difficulty walking and sometimes is required to walk

with a cane. Michelle is reasonably concerned that, should her condition continue to worsen, she may be unable to obtain the required certification from her doctor.

40.     When Michelle expressed concern to an employee of the Tourism Office of the City of Savannah that she might not be able to obtain the required medical certification, Michelle was told that there are doctors in Savannah who will complete the required certification even if she is not qualified under the standard set forth in the form. Michelle, however, feels that she should not be required to engage in any dishonest activity in order to continue to earn her livelihood as a tour guide. Michelle has visited the same physician for at least five years, and does not wish to visit a different doctor.

41.     Michelle last renewed her license in October 2014. At that time, Michelle was informed by the City that the certificate from her physician will expire in February 2015. Michelle was issued a license good for a period of only three months, and was told that she will be required to submit an updated certificate from her physician and a $10 fee to once again renew her license in February 2015.

42.     As a licensed tour guide in the City of Savannah, Michelle is required to pay the City's $1 per person speech tax whenever she gives a tour. Michelle works for voluntary contributions at the end of her tours, and on occasion has been required to pay the tax despite receiving no compensation from an audience member. In addition, Michelle sometimes does not charge for children under the age of twelve, but is nevertheless required to pay a 50-cent fee for children between the ages of twelve and four.

**Steven Freenor**

43.     Plaintiff Steven Freenor is a professor of American history at Columbia College in Hinesville, Georgia, and a teacher at Jenkins High School in Savannah, Georgia. At Jenkins High School, Steven teaches subjects including American government and American history.

44.     Steven is not licensed as a tour guide by the City of Savannah and thus cannot legally give a tour within the geographic boundaries of the City.

45.     Steven has not obtained a license because of the burdens that licensure would entail. Steven does not want to apply for a permit, does not want to take the City's 100-question multiple choice test, does not want to undergo examination by a doctor, does not want to undergo and pay for a criminal background check, and does not want to pay the annual licensing fee charged by the City. Steven also does not want to undertake the burden of maintaining a license once it has been issued—including the burden of submitting annual background checks, of taking another history test after three years, and of undergoing biennial examinations by a doctor.

46.     When Steven brings his classes to Savannah on field trips, Steven does not lead his students on tours of the City, as he is concerned that he would be sanctioned for serving as an unlicensed tour guide. Instead, Steven's wife Michelle leads Steven's students around the City on field trips.

47.     In order to make time to lead Steven's classes on field trips, Michelle often must forego opportunities to lead tours for profit. This results in foregone business and lost profit.

48.     Were it not for the City's licensing requirement, Steven would lead his own students on tours when in the City for field trips.

49.     Were it not for the City's requirement to obtain a license, Steven also would lead tours in Savannah for paying customers. Steven would lead tours at night, or in the summer when

he is not teaching. Because Steven could lead tours at the same time as Michelle, this would

allow Michelle's tour business to better accommodate periods of peak consumer demand.

50.     In addition, were it not for the City's requirement to obtain a license, Steven

would fill in for Michelle on days when Michelle's health problems make it difficult for her to

give a tour. Because Steven is not able to fill in for Michelle in this way, Michelle has been

forced to reduce the number of tours that she gives in a week. Michelle currently gives seven

tours a week, but she estimates that she could double that number to fourteen if Steven were

allowed to serve as a substitute in an emergency.

51.     In May 2012, when Michelle was unable to work for two weeks because of her

health problems, Savannah's licensing laws prevented Steven from taking over any of Michelle's

responsibilities as a tour guide. Were it not for Savannah's licensing laws, Steven would have

filled in for Michelle for at least some tours during that two-week period. Instead, Michelle was

forced to cancel tours that she had already booked.

**Dan Leger**

52.     Plaintiff Dan Leger, operating under the business name "Savannah Dan," has

worked for approximately six years giving tours of Savannah's historic district.

53.     Dan's tours provide an overview of the history of Savannah, from the 1700s up to

the present, and also provide information on Hollywood movies, architecture, folklore, ghost

stores, and local dining. When Dan gives a tour, he believes it is his job to entertain and to tell

tourists a good story.

54.     Dan is planning to expand his tour operation to include tours led by other guides.

These guides would speak on topics that are not covered by the City's tour guide exam. Dan has

planned out the subject matter of these tours, has reserved a web address to promote these tours, and also has reserved a toll free number to take reservations for these tours.

55.     Dan has not been able to offer the tours that he is planning, as he has thus far been unable to secure licensed guides with the necessary knowledge and experience. Dan knows several individuals who would be willing to work for him as tour guides in the evenings or on weekends, but those individuals are not willing to go through the hassle of obtaining a tour guide license to engage in such limited part-time work.

56.     Before Dan began working as a tour guide, he was required to submit a license application, take a 100-question multiple choice test, pay a $10 fee charged by the City of Savannah, submit to and pay for a background check, and undergo examination by a doctor to determine whether he was "qualified" to speak.

57.     When Dan most recently renewed his license, he was required to take and pass another history test. Although more than three years have passed since Dan was first issued his license, the City only recently decided to require that Dan take a second history test.

58.     For each of the approximately six years that he has been in business, Dan has been required to pay the $10 fee charged by the City of Savannah to renew his tour guide license. When Dan renews his license for the coming year, he will be required to again pay that fee.

59.     In order to renew his license, Dan is required to undergo examination by a doctor once every two years to determine whether he remains "qualified" to speak as a tour guide.

60.     As a licensed tour guide in the City of Savannah, Dan is required to pay the City's $1 per person speech tax whenever he gives a tour.

61.     Dan is required to pay the City's speech tax even when he is not paid by audience members. Dan works for voluntary payment at the end of his tour. On numerous occasions,

audience members have attended Dan's tour, but have paid Dan nothing—for instance, because they mistakenly believe their hotel has already paid for the tour. When that happens, Dan is required to pay $1 per audience member to the City for the mere privilege of having spoken.

### Jean Soderlind & Ghost Talk, Ghost Walk LLC

62.     Plaintiff Jean Soderlind manages Plaintiff Ghost Talk, Ghost Walk LLC, which is a company organized to sell tours of Savannah's historic district. Ghost Talk, Ghost Walk LLC has been in business for approximately 25 years. Jean and her daughter took over the business from a friend approximately 14 years ago, and Jean has managed the business ever since.

63.     Ghost Talk, Ghost Walk LLC hires licensed tour guides to conduct ghost tours. These tours are based on several books detailing the "spectral" history of Savannah. The tours consist primarily of stories about ghosts that inhabit homes or other buildings in the City.

64.     The City's tour guide examination does not include any questions about ghost stories in Savannah. Guides who lead tours for Ghost Talk, Ghost Walk LLC must therefore study both the material for the tour guide exam and other, nongovernmental material necessary to lead a ghost tour of Savannah.

65.     Jean was previously licensed as a tour guide but allowed her license to lapse in 2009. Jean is not currently licensed as a tour guide by the City of Savannah, and thus cannot legally give a tour within the geographic boundaries of the City.

66.     Jean has not obtained a license because of the burdens that licensure would entail. Jean does not want to apply for a permit, does not want to take the City's history test, does not want to undergo examination by a doctor, does not want to submit to and pay for a background check, and does not want to pay the annual licensing fee charged by the City. Jean also does not want to undertake the burden of maintaining a license once it has been issued—including the

burden of submitting annual background checks and of undergoing biennial examinations by a doctor.

67.   But for the City's licensing law, Jean would conduct tours in connection with her management of Ghost Talk, Ghost Walk LLC.

68.   The number of tour guides required by Ghost Talk, Ghost Walk LLC on any given night fluctuates with demand. The company offers tours during two time slots, and may have as few as one and as many as eleven tour guides out with tour groups during a time slot. When demand is high, the company requires additional tour guides to lead additional groups.

69.   Because the City limits the number of individuals who can be in a walking tour group, Ghost Talk, Ghost Walk LLC cannot respond to greater demand by simply adding more individuals to a single tour. Thus, when the company cannot find a guide to lead a group, the company is unable to accommodate demand and is forced to forego revenue.

70.   If Jean were able to lead tours for Ghost Talk, Ghost Walk LLC, she could help the company meet periods of heightened demand.

71.   In addition, the City's licensing regime has limited the ability of Ghost Talk, Ghost Walk LLC to find qualified tour guides. People who would be willing to lead a small number of tours on a part-time basis are unwilling to undertake the hassle of obtaining a license. This has hampered the company's ability to meet peak periods of demand and has led to foregone revenue.

72.   As a tour guide operator in the City of Savannah, Ghost Talk, Ghost Walk LLC is required to pay the City's $1 per person speech tax for audience members on its tours.

## INJURY TO PLAINTIFFS

73.     The City's licensing regulation threatens Plaintiffs with fines and imprisonment if they speak to their customers without a license.

74.     The City's attempt to restrict the discussion of information about the City's places and points of interest is causing and will continue to cause ongoing and irreparable harm to Plaintiffs.

### Injury To Unlicensed Plaintiffs

75.     But for the City's licensing requirement, Plaintiffs Jean Soderlind and Steven Freenor would conduct tours of the City. The burdens imposed by the City's licensing law have prevented Jean and Steven from leading tours, and thus have prevented them from exercising their First Amendment right to speak about the City of Savannah.

76.     In order to obtain a license to describe places and points of interest in the City, Plaintiffs Jean Soderlind and Steven Freenor would be forced to pay a substantial amount of money in fees, including the fee to take the City's tour guide licensing exam. Jean and Steven are unwilling to undertake those burdens in order to lead tours.

77.     In order to obtain a license to describe places and points of interest in the City, Plaintiffs Jean Soderlind and Steven Freenor would be forced to take and pass a history test. This would require them to devote time to reviewing the City's study materials—time that could be spent reviewing materials that are actually relevant to the tours that they would lead or to other productive pursuits. Jean and Steven are unwilling to undertake the burden of studying for an unnecessary examination in order to lead tours.

78.     In order to obtain a license to describe places and points of interest in the City, Plaintiffs Jean Soderlind and Steven Freenor also would be forced to undergo examination by a

doctor to determine whether they are "qualified" to speak. That would require them to devote time and money to an otherwise unnecessary trip to the doctor, and also would constitute an unnecessary and unwelcome invasion of their personal privacy. Jean and Steven are unwilling to undertake those burdens in order to lead tours.

79.     Once they had obtained a license, Plaintiffs Jean Soderlind and Steven Freenor would be required to undertake additional burdens to maintain the license. They would be required to undergo examination by a doctor every two years, submit to and pay for a criminal background check every year, and pay an annual fee to the City. Jean and Steven are unwilling to undertake those burdens in order to lead tours.

80.     Without a license, under the City's licensing regime, Plaintiffs Jean Soderlind and Steven Freenor are unable to meaningfully share their opinions, thoughts, and knowledge about Savannah, Georgia, with individuals who wish to take tours of the City.

81.     But for the City's licensing requirements, Plaintiff Steven Freenor would conduct tours of the City for his students. Steven's inability to conduct such tours has limited his ability to impart information to his students in the place and manner that he believes most appropriate.

82.     But for the City's licensing requirements, Plaintiff Steven Freenor would conduct tours as a substitute for his wife, Michelle Freenor, on occasions when her health makes it difficult for her to honor reservations. Steven's inability to conduct such tours has made it necessary for Michelle to limit the number of tours that she offers, and thus has resulted (and will continue to result) in foregone revenue for Michelle and Steven.

83.     But for the City's licensing requirements, Plaintiff Jean Soderlind would conduct tours for her company—Ghost Talk, Ghost Walk LLC—on occasions when peak demand makes it difficult to find adequate numbers of tour guides. Jean's inability to conduct such tours has

made it necessary for Ghost Talk, Ghost Walk LLC to turn away customers, and has resulted (and will continue to result) in foregone income for Jean and for Ghost Talk, Ghost Walk LLC.

### Injury To Licensed Plaintiffs

84.    Plaintiffs Michelle Freenor and Dan Leger are required to renew their license on a yearly basis. In addition to imposing the expense of a yearly licensing fee, the renewal process requires that they expend time that could otherwise be spent more productively—for instance, by leading tours or marketing their tour businesses. In order to renew the license, guides are required to fill out time-consuming paperwork and to make separate, in-person trips to both the Tourism Office and the Police Station.

85.    Plaintiffs Michelle Freenor and Dan Leger are required to undergo examination by a doctor once every two years as a condition of renewing their license. Doing so requires them to devote time and money to an otherwise unnecessary trip to the doctor, and also constitutes an unnecessary and unwelcome invasion of their personal privacy.

86.    But for the City's licensing requirement, Plaintiffs Michelle Freenor and Dan Leger would not incur the burden and expense of the yearly fee, of securing a background check, or of undergoing examination by a doctor to determine if they remain "qualified" to speak. These ongoing burdens are a direct result of the City's license requirement.

### Injury To Plaintiffs As Business-Owners

87.    The City's regulations also interfere with the ability of tour companies to hire additional guides to grow or maintain their businesses. Potential guides often are unwilling to undertake the burden and expense of obtaining a license merely to engage in part-time work. This poses substantial burdens for Plaintiffs' businesses.

88.     Plaintiff Dan Leger has been unable to find licensed guides with the necessary experience and qualifications to expand his business. Dan has made other investments in pursuit of a planned expansion, including retaining a web address and phone number, but has been held back by the lack of available guides. Dan knows several individuals who would be willing to work as guides but for the City's licensing requirements.

89.     But for the City's licensing requirement, Dan Leger would be allowed to hire unlicensed individuals on a part-time basis as guides for his tours. Dan's inability to hire such individuals has hampered the growth of his business, and has resulted (and will continue to result) in foregone business opportunities and lost income.

90.     Plaintiff Jean Soderlind and her company Ghost Talk, Ghost Walk LLC have been hampered in their attempts to hire qualified guides to lead their tours during periods of peak customer demand. Jean is aware of several individuals who would be willing to lead occasional tours on a part-time basis but for the City's licensing requirement.

91.     But for the City's licensing requirement, Jean Soderlind and Ghost Talk, Ghost Walk LLC would be allowed to hire unlicensed individuals on a part-time basis as guides for their tours. Their inability to hire such individuals has hampered the growth of the business, and has resulted (and will continue to result) in foregone business opportunities and lost income.

### Injury Caused By Savannah's Speech Tax

92.     Plaintiffs also are injured by the requirement to pay a $1 per person speech tax. The tax requires Plaintiffs to pay a sum of money to the City, and thus limits the profitability of their tour businesses. This injury is particularly acute when the tax is imposed even though an audience member has paid nothing for the privilege of being on the tour.

93.     Plaintiffs Michelle Freenor, Dan Leger, and Ghost Talk, Ghost Walk LLC have paid the $1 per person speech tax in the past and will continue to pay the speech tax in the future so long as it remains in force. The payment of this speech tax is an ongoing injury imposed by the City's regulations.

94.     But for the City's imposition of the $1 per person speech tax, Plaintiffs Michelle Freenor, Dan Leger, and Ghost Talk, Ghost Walk LLC would be able to lead tours of Savannah without being subject to a tax that singles out their First Amendment activity for special financial burdens not imposed on other activity in Savannah's historic district.

### LACK OF FOUNDATION FOR SAVANNAH'S REGULATIONS

95.     Any government interests purportedly advanced by the City's tour-guide licensing requirement could be advanced equally effectively by any number of less-restrictive alternatives—including a voluntary, rather than mandatory, tour-guide certification system.

96.     Upon information and belief, the City possesses no evidence that any interests purportedly advanced by its tour-guide licensing requirement could not be advanced equally well by a voluntary, rather than mandatory, tour-guide certification system.

97.     Upon information and belief, the City possesses no evidence that market forces (including the presence of online review sites such as Yelp and Trip Advisor) are insufficient to protect any government interest that might purportedly be advanced by the City's licensing requirement for tour guides.

98.     Upon information and belief, the City has no evidence that requiring tour guides to undergo examination by a doctor advances any government interest.

99.     Upon information and belief, the City has no evidence of harms that would arise if the requirement to undergo examination by a doctor was removed.

100.    Upon information and belief, the City has no evidence that requiring tour guides to undergo an annual criminal background check advances any government interest.

101.    Upon information and belief, the City has no evidence of harms that would arise if the requirement to submit to an annual background check was removed.

102.    Upon information and belief, the City has no evidence that requiring tour guides to submit an application and pay a licensing fee advances any government interest.

103.    Upon information and belief, the City has no evidence of harms that would arise if the requirement to submit an application and pay a licensing fee were removed.

104.    Upon information and belief, the City has no evidence that its history exam advances any government interest.

105.    Upon information and belief, the City has no evidence of harms that would arise if the requirement to pass a history exam were removed.

106.    Upon information and belief, the City has no evidence of any government interest that is served by requiring guides to take a history exam before they can lead ghost tours.

107.    Any government interests purportedly advanced by the City's $1 per person speech tax could just as effectively be advanced by a general tax on economic activity, which would allow the City to raise revenue without singling out First Amendment activity for special burdens.

108.    Upon information and belief, the City has no evidence that its speech tax advances any government interest that could not be advanced through a general tax on all economic activity in Savannah's historic district.

## COUNT I:
## FIRST AMENDMENT CHALLENGE TO
## SAVANNAH'S LICENSING REGIME

109.    All preceding allegations are incorporated here as if set forth in full.

110.    The mandatory sightseeing-guide-licensing scheme described above violates Plaintiffs' rights to free speech as guaranteed by the First Amendment to the United States Constitution.

111.    Unless Defendant is enjoined from enforcing the tour guide licensing regime codified at Savannah Code of Ordinances §§ 6-1502, 6-1508 to 1515, and 6-1550, Plaintiffs will suffer continuing and irreparable harm.

## COUNT II:
## FIRST AMENDMENT CHALLENGE TO
## SAVANNAH'S SPEECH TAX

112.    All preceding allegations are incorporated here as if set forth in full.

113.    Savannah's special tax on the expressive activity of tour guides violates Plaintiffs' rights to free speech as guaranteed by the First Amendment to the United States Constitution.

114.    Unless Defendant is enjoined from enforcing Savannah 2014 Revenue Ordinance Article T, § 3, Plaintiffs will suffer continuing and irreparable harm.

## REQUEST FOR RELIEF

Therefore, Plaintiffs respectfully request the following relief:

A.    A declaratory judgment by the Court that, facially and as applied to Plaintiffs, the tour guide licensing regime codified at Savannah Code of Ordinances §§ 6-1502, 6-1508 to 1515, and 6-1550 violates the First Amendment to the United States Constitution;

B.    A declaratory judgment by the Court that, facially and as applied to Plaintiffs, the speech tax codified at Savannah 2014 Revenue Ordinance Article T, § 3 violates the First Amendment to the United States Constitution;

C.      Permanent injunctive relief prohibiting Defendant or its agents from enforcing the

tour guide licensing regime codified at Savannah Code of Ordinances §§ 6-1502, 6-1508 to

1515, and 6-1550;

D.      Permanent injunctive relief prohibiting Defendant or its agents from enforcing the

speech tax codified at Savannah 2014 Revenue Ordinance Article T, § 3;

E.      An award of attorneys' fees, costs, and expenses in this action;

F.      An award of nominal damages in the amount of $1 to each Plaintiff; and

G.      Any other legal or equitable relief to which the Plaintiffs may show themselves to

be justly entitled.

Dated this 17th day of November, 2014.


                                     Respectfully submitted,


                                     s/ Anne W. Lewis
Robert J. McNamara*                  Attorney for Plaintiffs
Robert Everett Johnson*              Georgia Bar No. 737490
Attorneys for Plaintiffs             STRICKLAND BROCKINGTON LEWIS LLP
INSTITUTE FOR JUSTICE                1170 Peachtree Street, NE, Suite 2200
901 North Glebe Road, Suite 900      Atlanta, GA 30309
Arlington, VA 22203                  Tel: (678) 347-2204
Tel: (703) 682-9320                  Fax: (678) 347-2210
Fax: (703) 682-9321                  Email: awl@sbllaw.net
Email: rmcnamara@ij.org; rjohnson@ij.org
 * Pro Hac Vice Applications to be Filed